■ Louis F. Bertoni et al., Appellants, v Rocco F. Catucci et al., Respondents.—Main, J. Appeal from a judgment of the Supreme Court in favor of plaintiff GG Graphics, Inc., against defendants Rocco F. Catucci and Data Repro, Inc., entered October 15, 1984 in Broome County, upon a decision of the court at Trial Term (Kuhnen, J.), without a jury.

Plaintiffs Louis F. Bertoni and Delores O'Hara and defendant Rocco F. Catucci had known each other for some time and had been involved in various business dealings prior to the business dispute which precipitated the instant action. In the late summer or early fall of 1980, they discussed the possibility of establishing a business relationship for dealing in graphic arts. Ultimately, the trio decided to form a corporation under the name of plaintiff GG Graphics, Inc. (Graphics). Bertoni and O'Hara each contributed $10,000 to set up Graph-

ics and Catucci allegedly contributed $20,000. Each party was to own one third of Graphics' stock, but no stock was ever actually issued and Graphics existed only as a de facto corporation. O'Hara was to serve as president and Bertoni as vice-president, secretary and treasurer, while Catucci would serve as a vice-president and sales supervisor of manufacturing and processing. Graphics was housed in a building owned by O'Hara, who received rent for its use. After a very short time, differences of opinion arose. Catucci was apparently under the impression that Bertoni and O'Hara would play the role of silent partners and that he would have full authority to run Graphics. Subsequent to one of the disputes, Catucci quickly formed a new corporation, defendant Data Repro, Inc. (Repro), changed the locks on the O'Hara building, and advised customers and defendant Marine Midland Bank (Marine) that there had been a change in the name of Graphics. Catucci took all of the assets of Graphics, pledged them as security for a loan from Marine, and immediately began operating Repro. Utilizing the loan from Marine, Catucci ultimately purchased a building near the O'Hara building and moved Repro to the new building.

Plaintiffs commenced this action alleging that Catucci committed a breach of trust by delivering the assets of Graphics to Repro. Plaintiffs sought an accounting, the imposition of a trust and the appointment of a receiver to prevent wasting of assets, a judgment against Catucci for conversion, the setting aside of the security agreements between Marine and Catucci, an injunction against the further transfer of property, and counsel fees. A nonjury trial was held. At the close of plaintiffs' case, Trial Term granted Marine's motion to dismiss, stating that Marine had no responsibility to plaintiffs. At the trial's conclusion, the court found that Catucci had converted property belonging to Graphics and awarded Graphics damages equal to the value of those assets as of the time of the conversion. However, the court dismissed the action of the individual plaintiffs on the ground that they had no individual right to bring the action. The court refused to award counsel fees or the other requested relief. Plaintiffs appeal from the dismissal of the action against Marine, the limitation of damages, the dismissal of the claims of the individual plaintiffs, and the denial of the requested relief and counsel fees.

In their complaint, plaintiffs alleged that Marine had notice of the illegal transfer of Graphics' assets to Repro and that, accordingly, Marine's security interest in that property should have been invalidated or, alternatively, declared subordinate

to the interest therein of plaintiffs. Apparently, Trial Term was under the impression that plaintiffs were seeking money damages, as evidenced by its statement that it was "ruling on the claim by these plaintiffs in a complaint for damages against the bank". Hence, the court dismissed the claim and never reached the question of the validity or status of the security agreement. Nonetheless, dismissal of the claim was appropriate. Under Business Corporation Law § 720 (a) (2), an action may be brought to set aside an unlawful conveyance, assignment or transfer of corporate assets where the transferee knew of its unlawfulness. However, in this instance, no title was transferred to Marine. Moreover, the evidence produced at trial was such as to justify a conclusion that Marine had no notice of the dispute until the action was commenced. No evidence of any fraud or wrongdoing on the part of Marine was demonstrated. All that was shown was that Marine possibly should have known that the title to the assets might be in dispute.

We conclude that it was error to dismiss the individual claims of Bertoni and O'Hara. These plaintiffs were not suing as mere stockholders; rather, each was suing in his capacity as both an officer and a director. A stockholder does not have the right to sue in his own name alone for the misconduct of officers or directors (see, 3 White, New York Corporations ¶ 720.02 [1] [13th ed]). However, an officer or director may bring an action against another officer or director for his "neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge" (Business Corporation Law § 720 [a] [1] [A]). Inasmuch as such an action is not derivative but original, being a statutory right of action, an officer or director may sue in his own name. The officer or director suing does so as a representative of the corporation, and the right of recovery and cause of action belong to the corporation (Conant v Schnall, 33 AD2d 326, 328). Any money obtained in such an action would belong to the corporation and not to the individual officer or director (3 White, New York Corporations ¶ 720.02 [1] [13th ed]). Hence, the claims of the individual plaintiffs must be reinstated.

We turn next to the question of damages. It is well established that the officers and directors of a corporation stand in a fiduciary relationship to the corporation, owe to the corporation their individual loyalty, and are not permitted to derive a personal profit at the expense of the corporation (cf. Fender v Prescott, 101 AD2d 418, affd 64 NY2d 1077; Schachter v Kulik,

96 AD2d 1038, *appeal dismissed* 61 NY2d 758). An officer or director, acting in good faith, is not precluded from participating in a business similar to that of his corporation, but he must not act so as to cripple or injure the corporation; if he does, he is answerable for the damages it sustains because of that conduct *(Foley v D'Agostino,* 21 AD2d 60, 66-67). It would be difficult, indeed, to imagine how an officer's or director's conduct could be more disloyal or more destructive and injurious than that of Catucci. It appears from the evidence that Catucci took all of Graphics' employees and customers, converted all of its assets and pledged them as security to finance his new venture and, for all practical purposes, put Graphics out of business. There can be no question but that Catucci's actions were deliberate and that he purposefully injured, crippled and all but destroyed Graphics. Significantly, Trial Term found that Catucci had converted the assets of Graphics and that he had acted in bad faith, and Catucci has seen fit not to appeal from that determination. In view of the above, we find the limitation of damages or measure thereof imposed by Trial Term to have been unwarranted. As the Court of Appeals has noted, "Where * * * an officer has been found to have diverted corporate assets and opportunities, he may be held accountable for the fruits of his wrongdoing" *(Wolff v Wolff,* 67 NY2d 638, 641).

"In case of a breach of trust by directors, the value of any corporate assets wasted and the amount of expense incurred as the direct and natural result of their acts must be accounted for. Similarly, directors of a corporation who violate their fiduciary duty may be held responsible for *all damages naturally flowing* from their wrongdoing or misconduct, even though the precise result could not have been foreseen" (15 NY Jur 2d, Business Relationships, § 1071, at 341 [emphasis supplied]).

This would include an accounting to ascertain the damages resulting to Graphics from Catucci's diversion of business from it to Repro as well *(see, Maritime Fish Prods. v World-Wide Fish Prods.,* 100 AD2d 81, 91, *appeal dismissed* 63 NY2d 675).

We agree with Trial Term's refusal to impose a constructive trust upon Repro's profits. As an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate *(cf. Poling Transp. Corp. v A & P Tanker Corp.,* 84 AD2d 796). In addition, there are insufficient grounds to justify the imposition of a constructive trust on the

real property purchased by Catucci and his wife because there is no proof that Graphics' assets were used for that purchase.

Lastly, Trial Term properly denied plaintiffs' application for counsel fees. Ordinarily, counsel fees are not recoverable and may not be imposed in the absence of a contract or statute authorizing their imposition. Two exceptions, for the representation of minority stockholders in a derivative action and for the defense of officers in such a suit, are generally allowed. However, plaintiffs have advanced no valid reason to expand these limited exceptions. Trial Term's denial of the other relief sought was proper under the prevailing circumstances.

Judgment modified, on the law, with costs to plaintiffs, by reversing so much thereof as dismissed the causes of action by plaintiffs Louis F. Bertoni and Delores O'Hara; those causes of action reinstated, judgment granted in favor of said plaintiffs and matter remitted to Supreme Court for a determination of damages not inconsistent herewith; and, as so modified, affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.