In re the MONETARY GROUP, the Securities Groups, the Securities Group 1980, the Securities Group, Debtors.

Charles D. BARNETT, Randall W. Atkins, and 500 Park Avenue Associates, a Kentucky limited partnership, Appellants,

v.

The SECURITIES GROUPS, a New York general partnership, the Securities Group, a New York limited partnership, the Monetary Group, a New York limited partnership, and the Securities Group 1980, a New York limited partnership, Appellees.

Bankruptcy Nos. 84–428–Bk–J–GP, 84–430–Bk–J–GP, 84–431–Bk–J–GP, 84–433–Bk–J–GP. Nos. 88–945–Civ–J–12 to 88–956–Civ–J–12.

United States District Court, M.D. Florida, Jacksonville Division.

Aug. 31, 1990.

George E. Ridge; William G. Cooper; Guy R. Fairstein, Marks, Gray, Conroy & Gibbs, Jacksonville, FL; and Melanie G. May, Atty., Bunnell & Woulfe, P.A., Ft. Lauderdale, FL, for debtors.

Barnett & Alagia, Palm Beach, FL, Klein and Walsh, Jane Kreusler–Walsh, West Palm Beach, FL; Alison Kennedy, Atty.; and James C. Rinaman, Jacksonville, FL, for appellants.

Leslie Osborne, Furr & Cohen, Boca Raton, FL, for Randall Atkins.

### AMENDED ORDER AFFIRMING FINAL JUDGMENT OF BANKRUPTCY COURT

MELTON, District Judge.

In these bankruptcy appeals the Court returns to the Olivetti Building, situated at 540 Madison Avenue, New York, New York. In a previous appeal the Court affirmed the Bankruptcy Court's approval of a settlement between appellees' trustee and the Olivetti Building's present owner, The Equitable Life Assurance Society of the United States ("The Equitable"). *In re The Monetary Group (Atkins v. Lowin)*, 91 B.R. 138 (M.D.Fla.1988), *aff'g* 73 B.R. 630 (Bankr.M.D.Fla.1987). These appeals concern the events that led to The Equitable's ownership of the Olivetti Building and adjoining properties (collectively "the Property").

This cause is before the Court in the form of consolidated appeals of the final judgment, together with findings of fact and conclusions of law, of the United States Bankruptcy Court for the Middle District of Florida, dated July 13, 1988, *In re The Securities Groups*, 89 B.R. 204

(Bankr.M.D.Fla.1988), which found appellants liable to appellees in the amount of $31,975,100 as an appropriate remedy for appellants' conversion, unauthorized use of appellees' funds for nonpartnership purposes, usurpation of a partnership opportunity and violation of appellants' fiduciary responsibilities to appellees. The Bankruptcy Court also considered these cases in consolidated fashion. After deliberation and consideration of the briefs filed in these matters, the post-argument memorandum of appellants Randall W. Atkins and 550 Park Avenue Associates, the record on appeal, and the oral arguments of counsel, the Court concludes that the final judgment of the Bankruptcy Court should be affirmed.

Appellant Randall W. Atkins ("Atkins") and Charles Agee Atkins, his brother and a defendant below who has not joined these appeals, held partnership interests in both the appellees and in appellant 500 Park Avenue Associates ("Associates"). Appellant Charles D. Barnett ("Barnett") held partnership interests in The Securities Groups ("Groups") and The Securities Group 1980 ("TSG80"). Barnett was a general partner of The Securities Group ("TSG"). The Bankruptcy Court also found that Barnett was a *de facto* general partner of The Monetary Group ("TMG"). Atkins was a general partner of TSG and a limited partner of TMG. Atkins was formally a limited partner of Associates, but the Bankruptcy Court found that his active participation in the management of that partnership transformed him into a *de facto* general partner. Appellees TMG, TSG, and TSG80 are general partners of Groups. *See In re The Monetary Group*, 91 B.R. at 139 n. 1. When the initial events at issue took place, Groups consisted only of TMG and TSG. TSG80 became part of the partnership between the purchase of the Olivetti Building and the sale of the Property.

The substance of the underlying action is participation in disloyal conduct on the part of appellants to the detriment of appellees. In the course of investigating real estate leasing opportunities for TSG, confederates of Barnett and Atkins, some of whom were defendants below but do not join these appeals, discovered an investment opportunity in the purchase of the Olivetti Building. Associates was formed to exploit this opportunity. The purchase of the Olivetti Building and an adjoining property, the renovation of the facilities, and resale of the Property yielded substantial profits to Associates and its partners. Appellees sought recovery of the profits on the basis of lost partnership opportunity, breaches of fiduciary duties, conversion of partnership property, and misuse of partnership funds in the transactions involving the Property. The Bankruptcy Court ruled in appellees' favor on all relevant theories and imposed a constructive trust on the transactions.

Appellants collectively present seven issues in these appeals. These issues are: (1) appellants did not divert a partnership opportunity because the partnership would not or could not acquire the Property; (2) appellants were authorized by the partnership agreement to make independent investments, such as acquisition of the Property, without incurring liability to the partnership; (3) appellants did not convert or divert partnership property; (4) the conversion claim is barred by an applicable statute of limitations; (5) damages were determined erroneously; (6) appellant Atkins was not a de facto partner of appellant Associates; (7) appellant Barnett lacked sufficient knowledge of the activities of others and lacked independent actions of his own to warrant his liability to the partnership for misappropriation of a partnership opportunity. On issue five, the matter of the calculation of damages, appellants Atkins and Associates submitted, at the Court's request, a post-oral argument memorandum, filed herein on October 27, 1989.

Many of the issues raised by appellants directly challenge the findings of fact of the Bankruptcy Court. Pursuant to Bankruptcy Rule 8013, this Court must give due regard to the Bankruptcy Court's assessment of the credibility of witnesses and set aside findings of fact only if they are clearly erroneous. "Where there are two permissible views of the evidence, the

fact finder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Thus, when the Bankruptcy Court's view of the evidence is permissible, that is, supported by substantial evidence, this Court should affirm that court without regard for whatever other permissible views of the evidence that appellants propose. Appellants' arguments do not demonstrate only one permissible view of the evidence, particularly when due regard is given to the Bankruptcy Court's assessment of the credibility of witnesses. The Court is of the opinion that the Bankruptcy Court's final judgment may be affirmed as to issues one, two, three, six and seven without further discussion.[1] Issues four and five merit some exposition to clarify the basis of this Court's decision to affirm.

 Issue four, the statute of limitations for the conversion claim, does not provide a basis for disturbing the ruling of the Bankruptcy Court. If appellants succeeded on this issue, the alternative bases for imposing a constructive trust would still survive and justify the relief ordered.[2] *See Smith v. Driscoll*, 69 A.D.2d 857, 415 N.Y.S.2d 455, 457 (2d Dep't 1979) (statute of limitations for conversion does not bar equity action that "arises as a sequel to the alleged conversion"). This affirmative defense, however, was waived both at the pleading stage and at subsequent argument. *See In re Augenblick*, 66 N.Y.2d 775, 777, 497 N.Y.S.2d 363, 364, 488 N.E.2d 109, 110 (1985) (defense is waived if not pled). Appellants do not deny their failure to raise the issue until late in the litigation in the Bankruptcy Court. Indeed, appellants assert that "[t]here is no ... requirement of arguing 'vigorously' " to preserve an issue for appeal and that Atkins adequately raised the argument in his posttrial reply brief. Contrary to these assertions, vigorous argument is a prerequisite to the preservation of an issue for appeal, and a post-trial reply brief is too late to raise an issue for the first time in the Bankruptcy Court. *See In re The Monetary Group*, 91 B.R. at 140–41; *accord In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201, 1207 (11th Cir.1989) (listing five instances in which extraordinary review may be exercised); *MortgageAmerica Corp. v. Bache Halsey Stuart Shields, Inc.*, 789 F.2d 1146, 1149–50 (5th Cir.1986); *In re Facility Sys., Inc.*, 101 B.R. 519, 522–24 (N.D.Ill.1989). It is particularly inappropriate to exercise extraordinary review for this issue because the statute of limitations is waivable and therefore should not be revived when waiver is apparent. Appellants' admissions are fatal to this issue.

 Issue five, the calculation of damages, suffers from confusion surrounding the terminology used by the Bankruptcy Court. It concluded that the imposition of a constructive trust on all gains received by appellants from the resale of the Property served as the appropriate remedy for appellants' conversion, unauthorized use of appellees' funds for nonpartnership purposes, usurpation of a partnership opportunity and violation of appellants' fiduciary re-

---

**1.** The Court notes Barnett's concern that he is little mentioned by name in the Bankruptcy Court's findings. Those instances in which he is mentioned, however, provide a sound basis for the conclusions drawn by the Bankruptcy Court. In addition, "[a]n appellate court may look to the whole record, and may gain a full understanding of the factual basis of the decision by comparing the formal findings with other information." *Ferguson v. Hill*, 846 F.2d 20, 21 (5th Cir.1988). The complaint of the lack of specificity in the lower court's findings, moreover, is more properly the subject of a motion pursuant to Bankr.R. 7052, which incorporates Fed.R.Civ.P. 52(b), than of an appeal. *See Evans v. Suntreat Growers & Shippers, Inc.*, 531 F.2d 568, 570 (Tem.Emer.Ct.App.1976); *Betancourt v. Garcia*, 49 B.R. 620, 622 (D.P.R.1985). Review by this court is not impaired by a lack of speci-

ficity or the failure to move under Rule 7052, but findings "should be construed liberally and found to be in consonance with the judgment, so long as that judgment is supported by evidence in the record." *Gilbert v. Sterrett*, 509 F.2d 1389, 1393 (5th Cir.), *cert. denied*, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). Given this scope of review, this Court finds no difficulty in affirming the Bankruptcy Court's findings concerning Barnett.

**2.** The alternative bases for imposing liability on appellants also provide grounds to find harmless any error regarding issue three, as well as the error urged by Barnett, and apparently conceded by appellees at oral argument, that Barnett was not guilty of conversion.

sponsibilities to appellees. 89 B.R. at 219 (conclusion of law ¶ 19). Appellants latch on to the Bankruptcy Court's subsequent reference to appellees' "damages," arguing the merits of the losses actually suffered and the adequacy of a legal remedy in lieu of the constructive trust. These arguments originate in an apparent misunderstanding regarding the Bankruptcy Court's legal conclusion.

■ Under New York law, the constructive trust arises from either an abuse of a fiduciary relationship or an unjust enrichment and it reaches the whole of the proceeds of the property unjustly acquired. *See, e.g., Simonds v. Simonds,* 45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 363, 380 N.E.2d 189, 193–94 (1978); *Latham v. Father Divine,* 299 N.Y. 22, 85 N.E.2d 168, 170 (1949); *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, J.). Appellants suggest that appellees suffered no real loss or, in the alternative, that appellees' losses may be remedied at law by damages; both contentions are in error. The nature of the wrong suffered by the partnership lies in the profit opportunity that was usurped by appellants and financed by appellees' resources. Return of the misappropriated monies, even with interest, does not disgorge the unjust enrichment that appellants enjoyed by virtue of the use of those monies. The apparent profit received by appellants also does not measure the partnership's lost profit opportunity because the complexity of appellants' transactions conceals the true extent of the profit opportunity. The case authority cited by appellants does not provide support for appellants' many arguments to limit the measure of appellees' recovery.[3]

Appellants complain of the factors that entered into the Bankruptcy Court's calculation of the value of the constructive trust. The amount appears excessive to them because it exceeds the monies that appellants claim to have actually received as their profits from the sale of the Property. Appellants, however, use figures that conceal the extent of their gain from the complex transactions surrounding the acquisition and disposition of the Property. Appellants' figures do not reflect a gain on their part in the form of approximately $12.6 million in financing above the cost of acquiring the Property, which appellants used for other purposes. Additionally, appellants do not add in the other two elements in the Bankruptcy Court's calculation, profits distributed by the Equitable for condominium sales and an unreturned security deposit. *See* 89 B.R. at 220. Moreover, the Bankruptcy Court allowed deductions for improvements to the Property which it was not compelled to credit under New York law. *See Warner v. Warner,* 199 A.D. 159, 191 N.Y.S. 612, 616–17 (2d Dep't 1921) ("A wrongdoer, with knowledge of his wrongdoing and of the rights of

---

3. In *319 East 72nd Street Corp. v. George W. Warnecke & Co.,* 20 A.D.2d 513, 244 N.Y.S.2d 604 (1st Dep't 1963), no mention is made of appellants' assertion that damages must be limited to the profit derived from the sale of the building, although the dissenting judge indicates that he would so limit recovery. *See id.,* 244 N.Y.S. at 606 (Eager, J., dissenting in part). The Appellate Division affirmed the trial court's remedy "that the property came into [defendant's] hands subject to a constructive trust for plaintiffs' benefit." *Id.*

Appellants cite *Burg v. Horn,* 380 F.2d 897 (2d Cir.1967), for the proposition that appellees must have suffered a monetary loss in order to claim either damages or a constructive trust. This is an incorrect reading of the case, *see id.* at 901–02, an obviously erroneous interpretation of New York constructive trust doctrine, *see Simonds, supra,* and an assertion of fact (the claim that the partnership received return of all security deposits) which contradicts the findings

of the Bankruptcy Court without a showing that the findings are clearly erroneous.

Appellants additionally rely on *Lichtyger v. Franchard Corp.,* 18 N.Y.2d 528, 277 N.Y.S.2d 377, 223 N.E.2d 869 (1966), and *Bertoni v. Catucci,* 117 A.D.2d 892, 498 N.Y.S.2d 902 (3d Dep't 1986), to argue that a legal remedy should be imposed, rather than a constructive trust, if the legal remedy is adequate. The proposition is sound, but its application here is weak. Appellants do not explain what legal remedy provides adequate compensation to appellees. In *Lichtyger* and *Bertoni* the plaintiffs suffered direct losses that adequately measured their damages. Appellees "loss" here, however, results from the lost opportunity to share in the extraordinary profit potential of the purchase and subsequent resale of the Property. Point in fact, *Bertoni,* while finding insufficient predicate on its facts, suggests that the purchase of real property with the assets of others will give rise to a constructive trust. *See* 498 N.Y.S.2d at 905.

the true owner, has no claim to permanent improvements placed upon the property unlawfully in his possession."); 5 A. Scott, *The Law of Trusts* § 479.1, at 3461 (3d ed. 1967) (*Warner* principle is applied to constructive trusts); *see also United States v. Fontana,* 528 F.Supp. 137, 146 n. 12 (S.D.N.Y.1981) (New York courts generally follow Scott on matters involving constructive trusts). In short, the value of the constructive trust is influenced by a variety of sources which are not reflected in appellants' personal profits from the sale of the Property alone. *Cf. Restatement of Restitution* §§ 157–160, 202 (1937); *Restatement (Second) of Restitution* §§ 30, 32, 33, 37 (Tentative Draft No. 2 1984). The Bankruptcy Court's calculations assess a value at least as great as any other reasonable method of calculation and, in the absence of a cross-appeal, those calculations should be affirmed as a reasonable exercise of discretion in determining the value of the constructive trust.

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED:**

That the final judgment of the Bankruptcy Court is AFFIRMED in all respects.

**DONE AND ORDERED.**